Alberto **HERNANDEZ**, Appellant,

v.

**HAMMOND HOMES, LTD.,** and **Hammond Homes I, L.L.C.,** Appellees.

No. 05–09–01382–CV.

Court of Appeals of Texas, Dallas.

June 8, 2011.

Rehearing Overruled Aug. 11, 2011.

152 ■ 

Michael C. Freden, Noteboom, The Law Firm, Hurst, for Appellant.

Michelle E. Robberson, R. Douglas Rees, Cooper & Scully, P.C., C. Bryce Benson, Jason Keith Fagelman, Fulbright & Jaworski L.L.P., Dallas, for Appellees.

Before Justices O'NEILL, FRANCIS, and MYERS.

## OPINION

Opinion By Justice MYERS.

Alberto Hernandez appeals the trial court's take-nothing judgment on his claims against Hammond Homes, Ltd. and Hammond Homes I, L.L.C. Appellant brings four issues on appeal asserting the trial court erred in granting appellees' motion for summary judgment on appellant's claims for negligence and premises liability. We affirm the trial court's judgment.

## BACKGROUND

Appellant worked as a roofer for Felix Brito, a roofing contractor. In 2002, appellees were building a house, and they hired Brito to install the roof. On February 15, 2002, appellant was working on the roof. As appellant descended a ladder from the roof, the ladder slipped, and he fell to the ground. Appellant was paralyzed as a result of the fall.

Appellant sued appellees for premises liability and negligence.[1] Appellees moved for summary judgment on the grounds that they had no duty to appellant because appellant was the employee of an independent contractor,[2] that they did not exercise any control over the roofing activities related to appellant's injuries, and that chapter 95 of the Texas Civil Practice & Remedies Code relieved them of liability. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.001–.004 (West 2005). The trial court granted the motion for summary judgment.

## STANDARD OF REVIEW

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.-Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex.App.-Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts

---

1. Appellant also alleged a cause of action for negligent hiring, but appellant does not assert on appeal that the trial court erred in granting appellees' motion for summary judgment on that cause of action.

2. Brito testified in his deposition that appellant was an independent contractor or was the employee of the leader of the roofing crew who selected the other roofers for the job.

Whether appellant was Brito's employee, an independent contractor, or the crew leader's employee does not affect the outcome of this case. Although we refer to appellant as Brito's employee in this opinion, we make no determination or holding that appellant is not Brito's independent contractor or the employee of the crew leader.

resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

## DUTY OF GENERAL CONTRACTOR TO EMPLOYEE OF INDEPENDENT CONTRACTOR

In his fourth issue, appellant contends the trial court erred in granting appellees' motion for summary judgment on the ground that they did not have any duty to appellant because appellant was the employee of an independent contractor. Whether appellees owed appellant a duty is a question of law. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex.2009); *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990).

### Negligent Activity

▪▪▪ Appellant alleged a negligent activity claim against appellees. Under this claim, the dangerous condition arises as a result of the independent contractor's work activity. Generally, an employer of an independent contractor does not owe a duty to ensure that the independent contractor performs its work in a safe manner. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex.2008); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). However, "one who retains a right to control the contractor's work may be held liable for negligence in exercising that right." *Moritz*, 257 S.W.3d at 214; *see Redinger*, 689 S.W.2d at 418 (adopting RESTATEMENT (SECOND) OF TORTS § 414 (1965)). For liability to attach, "[t]he employee's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports." *Dow Chem.*

*Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (quoting *Redinger*, 689 S.W.2d at 418 (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c)). For a duty to arise, the control must be over the manner in which the independent contractor performs its work. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex.2001). The employer's duty "is commensurate with the general control it retains over the independent contractor's work." *Id.* Also, "[t]he supervisory control retained or exercised must relate to the activity that actually caused the injury...." *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex.1999) (per curiam); *see Moritz*, 257 S.W.3d at 215 ("[I]t is not enough to show that the defendant controlled one aspect of Moritz's activities if his injury arose from another."); *Hagins v. E–Z Mart Stores, Inc.*, 128 S.W.3d 383, 388–89 (Tex.App.-Texarkana 2004, no pet.) ("By broadening the issue to encompass any exercise of supervisory control by E–Z Mart over Lance, Hagins' estate would eliminate the requirement that the retention of control relate to the activity that actually caused the injury.").

▪▪▪ A party can prove a right to control in two ways: first, by evidence of a contractual agreement that explicitly assigns the employer a right to control; and second, in the absence of a contractual agreement, by evidence that the employer actually exercised control over the manner in which the independent contractor performed its work. *Dow Chem. Co.*, 89 S.W.3d at 606; *Coastal Marine Serv.*, 988 S.W.2d at 226. If a written contract assigns the right to control to the employer, then the plaintiff need not prove an actual exercise of control to establish a duty. *See Pollard v. Mo. Pac. R.R. Co.*, 759 S.W.2d 670, 670 (Tex.1988) (per curiam). However, if the contract does not explicitly assign control over the manner of work to the

employer, then the plaintiff must present evidence of the actual exercise of control by the employer. *See Dow Chem. Co.*, 89 S.W.3d at 606; *Hagins*, 128 S.W.3d at 388–89.

In this case, there was no written contract between appellees and Brito. Therefore, we must determine whether appellees actually exercised any control over the manner in which Brito's employees performed their work relating to the activity that caused appellant's injury, that is, working without fall-protection equipment.

■ Appellant asserts the summary judgment evidence raised a fact issue as to appellees' actual knowledge of the dangerous condition and their control over the formation, content, and enforcement of any fall-protection measures. Gary Strowd, appellees' builder, who supervised the home's construction, testified he knew roofing was a dangerous occupation due to the risk of falling. He also testified that neither he nor appellees required roofers to use fall-protection equipment but that he and appellees could have required its use. He also testified that if appellant had used a fall-protection system to stop his fall to the ground, he might not have been injured. As discussed above, when, as in this case, there is no contract explicitly assigning the employer a right to control, the evidence of a right to control comes from the employer actually exercising control over the manner in which the independent contractor's work was performed. *Dow Chem. Co.*, 89 S.W.3d at 606. Strowd's knowledge of the risk of roofers' falling and his and appellees' failure to require fall-protection equipment is not evidence that Strowd and appellees actually exercised control over the manner in which Brito's employees performed their work. Instead, it is evidence that they exercised no control over Brito's employees' working without fall-protection equipment. We conclude that this evidence does not raise a genuine issue of material fact regarding appellees' actual exercise of control over Brito's employees' performance of their work without fall-protection equipment.

■ Appellant cites evidence of what he asserts are three examples of appellees' control over the manner of Brito's employees' performance of their work. The first is that when Strowd needed to communicate with Brito's employees, he would telephone Brito with the information, and Brito would telephone his employees and pass on Strowd's instructions. The evidence showed these instructions were to correct defects in the work or to pick up trash. There was no evidence that appellees' instructions concerned the manner in which the work was performed. Brito testified that appellees never told him how to go about roofing the house. Strowd testified his communications with the roofers through Brito were to correct defects in the work. Brito's crew chief, Arturo Rodriguez, testified in his affidavit that Strowd told him to correct mistakes and that he "told us what to do at work."[3] This evidence does not raise a fact question concerning appellees' control over Brito's employees' working without fall-protection equipment.

Appellant next points to evidence that appellees had authority to fire Brito's employees. Appellant argues this evidence shows appellees exercised control over the manner in which Brito and his employees

---

3. An employer has authority to tell an independent contractor to start or stop work, to inspect progress, and to receive reports without subjecting itself to liability as a master. *See Redinger*, 689 S.W.2d at 418. Rodriguez's statement that Strowd "told us what to do at work," is not evidence that appellees through Strowd exercised control over the manner of Rodriguez and his crew's working without fall-protection equipment.

performed their work. Brito testified that Strowd had authority to tell Brito not to permit a particular employee to work on the construction site. Rodgriguez stated in his affidavit that appellees could fire Brito's employees if they did not follow Strowd's instructions. Rodriguez also stated that appellees never required them to use fall-protection equipment. Because appellees never instructed Brito's employees to use fall-protection equipment, testimony that appellees could have fired Brito's employees for not following instructions is not evidence that appellees actually exercised control over Brito's employees' working without fall-protection equipment.

Finally, appellant points to evidence that after appellant's accident, Strowd instructed Brito's employees to wear hard hats. Because this exercise of control was issued after the accident, it was not evidence that appellees exercised control at the time of the accident. Furthermore, evidence that appellees required Brito's employees to wear hard hats is not evidence that appellees exercised control over the roofers' working without fall-protection equipment.

Appellant also appears to argue some evidence shows that if appellees had required safety measures, such as a safety-rope system or other fall-protection equipment, appellant would have followed the requirements and he would not have been injured. The Texas Supreme Court faced a similar argument in *Coastal Marine Service of Texas, Inc. v. Lawrence*. In that case, Coastal had hired Campbell Construction Co. to offload skids on Coastal's property. The Campbell employees were using a crane owned by Coastal to perform the work. John Lawrence, a Campbell employee, was killed by the crane. *Coastal Marine Serv.*, 988 S.W.2d at 224. There was no written contract between Campbell and Coastal. *Id.* Coastal's em-

ployees were not directing or supervising Campbell's work on the project, and they were not present when the accident occurred. *Id.* at 225. Lawrence's surviving family and estate presented the testimony of Campbell's employees that they would have complied with any instructions about the movement of the crane if Coastal had given such instructions. *Id.* The supreme court determined the testimony that Campbell's employees would have taken direction from Coastal if any had been provided was not evidence of a right to control: "A possibility of control is not evidence of a 'right to control' actually retained or exercised." *Id.* at 226. Likewise, in this case, any evidence that Brito's employees would have used fall-protection equipment if required by appellees is evidence of only a possibility of control; it is not evidence "of a 'right to control' actually retained or exercised." *Id.*

Appellant also asserts the supreme court has "recognized that a general contractor has actually exercised control of a premises when the general contractor knew of a dangerous condition before an injury occurred and approved acts that were dangerous and unsafe." *Dow Chem. Co.*, 89 S.W.3d at 609. In the *Dow Chemical Co.* opinion, the supreme court was referring to its decision in *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778 (Tex.2001). In *Lee Lewis*, the plaintiff was working for a subcontractor on a construction site where the defendant was the general contractor when the plaintiff fell from the tenth story. *Id.* at 781. The evidence was undisputed that the plaintiff was not using an independent lifeline that would have stopped his fall. *Id.* at 782. The evidence in that case showed the defendant had a superintendent on the ninth and tenth floors with "the responsibility . . . to see to it that the subcontractors and their employees properly utilized fall protection equipment." *Id.* at 784. This superinten-

dent personally approved the lanyard system used by the subcontractor. The superintendent also knew of and did not object to the subcontractor's employees' use of a bosun's chair without an independent lifeline. The supreme court held this testimony constituted more than a scintilla of evidence that the defendant retained the right to control the fall-protection systems used on the jobsite. *Id.* In this case, however, appellees did not require the use of fall-protection equipment, did not have anyone assuring that fall-protection equipment was used by the roofers, and did not approve acts that were dangerous and unsafe. Thus, the supreme court's opinion in *Lee Lewis* and the quoted statement from *Dow Chemical Co.* are distinguishable.[4]

We conclude the trial court did not err in determining appellees did not owe appellant a duty on appellant's negligent-activity claim.

### Premises Condition

■■■ Appellant also alleged a premises-defect claim against appellees. In a premises-liability case, a landowner is liable to employees of an independent contractor only for claims arising from a concealed, pre-existing defect rather than from the contractor's work. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex.

2008). "With respect to existing defects, an owner or occupier has a duty to inspect the premises and warn of *concealed* hazards the owner knows or should have known about." *Id.* (quoting *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex.2004)). Appellant alleged the premises were defective because appellees failed to provide fall protection for appellant. However, the danger of falling and the lack of fall protection, such as a safety-rope system or scaffolding, was an open and obvious defect, not a concealed defect. Appellant testified he knew roofing work and descending a ladder from a roof was dangerous "because of the height." Appellant was aware of the danger of falling inherent in roofing work because he had fallen off a roof about nine months earlier. Appellant also knew that no fall protection was provided.

■■■ As the supreme court stated in *Moritz*,

An independent contractor owes its own employees a nondelegable duty to provide them a safe place to work, safe equipment to work with, and warn them of potential hazards; it also controls the details and methods of its own work, including the labor and equipment employed. Thus, one who hires an independent contractor generally expects the

---

**4.** In *Dow Chemical Co.*, the supreme court distinguished the facts of that case from *Lee Lewis*. In *Dow Chemical Co.*, an employee of an independent contractor hired by Dow was injured when an improperly secured pipe above him broke free and fell, trapping the employee's arm. The pipe had been improperly secured by another employee of the independent contractor. The employee sued Dow. *Dow Chem. Co.*, 89 S.W.3d at 605. In distinguishing that case from *Lee Lewis*, the supreme court stated,

Had the Dow safety representative actually approved how the pipe in question was secured or instructed Bright [the plaintiff] to perform his work knowing of the danger-

ous condition, we could have a fact scenario mirroring *Lee Lewis*. However, we have never concluded that a general contractor actually exercised control of a premises where, as here, there was no prior knowledge of a dangerous condition and no specific approval of any dangerous act.

*Id.* at 609. In this case, Strowd and appellees may have known of the dangerous condition of working on a roof without fall-protection equipment, but appellant has not presented evidence raising a genuine issue of material fact that appellees specifically approved of any dangerous act, including appellant's working on the roof and descending on the ladder without fall-protection equipment.

contractor to take into account any open and obvious premises defects in deciding how the work should be done, what equipment to use in doing it, and whether its workers need any warnings. Placing the duty on an independent contractor to warn its own employees or make safe open and obvious defects ensures that the party with the duty is the one with the ability to carry it out.

*Id.* at 215–16 (footnotes omitted). Appellees' only duty was to warn appellant of concealed defects he might encounter in doing his work. The danger of falling and the lack of fall protection were not concealed defects, and appellees owed no duty to appellant to warn him or to repair these defects.

We conclude the trial court did not err in determining appellees did not owe appellant a duty on his premises-liability claim. We also conclude the trial court did not err in granting appellees' motion for summary judgment. We overrule appellant's fourth issue.

### CHAPTER 95

Appellant's first three issues concern whether appellees were entitled to the statutory protections of chapter 95 of the Texas Civil Practice & Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 95.001–.004. Because we conclude the trial court properly granted appellees' motion for summary judgment on common-law grounds, we do not reach appellant's issues contending the court erred in granting summary judgment on statutory grounds. *See* Tex.R.App. P. 47.1.

### CONCLUSION

We affirm the trial court's judgment.